```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
CHRISTIE'S INC.,

                    Petitioner,

     - against -                          MEMORANDUM AND ORDER

DEBRA L. TURNER and THE SEAN N. PARKER    20 Civ. 3146 (NRB)
FOUNDATION,

                    Respondents.
------------------------------------X
```
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Before the Court is petitioner Christie's Inc.'s ("petitioner" or "Christie's") application to confirm an arbitration award (the "Award") issued in arbitration proceedings ("Arbitration") between claimant Christie's and the respondents Sean N. Parker Foundation (the "Foundation") and Debra L. Turner ("Turner") (together, "respondents") pursuant to Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Specifically, Christie's seeks an order confirming and entering judgment upon the Award (1) declaring that the Foundation holds valid title to the Peter Paul Rubens painting titled "A Satyr Holding a Basket of Grapes and Quinces with a Nymph" (the "Painting"); (2) ordering Christie's to immediately ship the Painting to the Foundation; and (3) ordering Christie's to immediately pay the auction proceeds to Turner. For the reasons set forth below, petitioner's motion to confirm the Award is granted.

**I. Background**[1]

The Arbitration that is the subject of this petition resolved a three-party dispute between Turner, who consigned the Painting to Christie's; Christie's, who sold the Painting at auction; and the Foundation, who bought the Painting at auction. The facts giving rise to the Arbitration are set forth below.

On February 21, 2018, Christie's and Turner entered into a Seller's Contract, under which Christie's agreed to sell the Painting as part of its Old Masters I auction in New York on April 19, 2018. The Seller's Contract stated, in relevant part, that the reserve price — i.e., the lowest possible sale price for the Painting — was $5 million. ECF No. 6-2 at 2. It also stated that Turner could not unilaterally withdraw the Painting from auction. ECF No. 6-2 ¶ 9.

At the auction on April 19, 2018, the Foundation purchased the Painting at a "hammer price" of $4.8 million, which meant that Christie's contributed $200,000 to reach the reserve price of $5 million. The Seller's Contract provided for a 2% seller's commission. ECF No. 6-2 at 4. As a result, the proceeds due to Turner amounted to $4.9 million.

---

[1] The facts are drawn from the Petition to Confirm Arbitration Award, ECF No. 1, and the exhibits appended to the Declaration of Michael Holecek in Support of Petition for Confirmation of Arbitration Award, ECF No. 6, which include, inter alia, the arbitrator's Award (ECF No. 6-1), Seller's Contract (ECF No. 6-2), and Buyer's Contract (ECF No. 6-3).

The purchaser of the Painting, the Foundation, is a California nonprofit public benefit corporation. When submitting a bid for the Painting, the Foundation assented to be bound by a Buyer's Contract with Christie's. ECF No. 6-3 at 2. After winning the Painting, the Foundation paid a "buyer's premium," which brought the total realized price to $5,712,500. The Foundation paid Christie's in full for the Painting on May 2, 2018.

Notwithstanding the foregoing, after the auction, Turner claimed that she had canceled the sale of the Painting before the auction. Turner also claimed that following the auction, Christie's and/or the Foundation had canceled or waived the auction results through post-auction attempts to resolve their dispute with Turner. ECF No. 6-1 at 12. The Foundation, meanwhile, maintained that it was entitled to the Painting, having purchased it at auction. The parties attempted to resolve the dispute in mediation, but were unsuccessful in doing so.

On May 15, 2019, Christie's served a Three-Party Demand for Arbitration as provided for under the JAMS Rules and the arbitration agreements set forth in the Buyer's Contract and Seller's Contract. On June 18, 2019, Turner served a response in the Arbitration on her own behalf. On June 27, 2019, JAMS appointed Michael D. Young ("Young") as arbitrator for the dispute. On June 28, 2019, the Foundation served a responding statement and

counterclaims. On August 6, 2019, Christie's served a response, claim for relief, and affirmative defenses. The parties — including Turner — then engaged in discovery.[2] Five months into the Arbitration, Turner attempted to sever her arbitration with Christie's from the Foundation's arbitration with Christie's, but Young denied this motion on October 24, 2019. On November 11, 2019, Christie's moved for summary disposition, arguing that Christie's and Turner entered into a valid contract to sell the Painting, which was not waived or canceled prior to the auction. The Foundation also moved for summary disposition, arguing that it was entitled to possession of the Painting as buyer under the relevant contracts and the entrustment doctrine of the Uniform Commercial Code. Turner — who, despite repeated encouragement from Young, did not retain counsel — opposed Christie's and the Foundation's motions through an informal email she sent to Young. She also moved to recuse the arbitrator following JAMS's standard disclosure, which stated that Young is a shareholder in JAMS and that other JAMS arbitrators had mediated or arbitrated matters involving Gibson Dunn (Christie's counsel), Patterson Belknap (the Foundation's counsel), and/or Christie's. ECF No. 6-1 at 33.

---

[2] Turner obtained communications between Christie's and the Foundation concerning the auction of the Painting (with the exception of privileged documents). Turner threatened to disseminate confidential documents and information to the press, which Young precluded by entering a protective order.

On December 10, 2019, Young granted Christie's motion for summary disposition regarding "any claims, defenses or arguments by Ms. Turner that there was anything illegal or improper in the formation of the contract between her and Christie's, or that Christie's did not properly carry out its contractual obligations vis a vis the conduct of the auction or leading up to the auction, or that Christie's otherwise breached the contract by failing to return the subject painting prior to the auction of it." ECF No. 6-1 at 9.  Young reserved decision on the Foundation's motion. Young also denied Turner's motion regarding his recusal.

The parties prepared for a one-day hearing regarding the "interaction of the parties after the auction took place and on Ms. Turner's argument that the auction was either canceled or the results waived." ECF No. 6-1 at 11.  The hearing took place on January 14, 2020 and concluded upon receipt of post-hearing briefs on March 5, 2020.  All three parties contributed to the record, submitting a collective 200 exhibits.  Three witnesses testified, including Sandra Cobden (Christie's inhouse legal counsel), Susan Dawson (the Foundation's general counsel), and Turner.

Central to the hearing were Cobden's and Turner's accounts of a post-auction June 20, 2018 meeting at Turner's home.  Turner testified that Cobden presented an offer to resolve the dispute on behalf of Christie's, but stated that if Turner refused the offer

the Painting would be returned.  Cobden agreed that she put forth an offer, but denied promising to return the Painting to Turner should she refuse to accept the offer.  According to an email on the record, following the meeting, Cobden wrote to Turner that "if you do reject[] our proposal, we would recommend giving the Rubens back to you," but that such an action would "need Executive Management approval" and be subject to "a decent risk" that the Foundation would sue Christie's and Turner for the Painting.  ECF No. 6-1 at 22-23.  If the Foundation sued, this "may complicate the return of the work."  Id. at 23.

Young issued the Award on April 6, 2020, which found that, as a matter of both law and fact, the Foundation is the rightful owner of the Painting and Turner is entitled to the auction proceeds pursuant to the Seller's Contract.  ECF No. 6-1 at 25-26.  Refuting Turner's claim that Christie's canceled the auction results at the June 20, 2018 meeting, Young ruled that Christie's never canceled the auction results because (1) the Foundation became the owner of the Painting upon payment such that Christie's could not legally return the Painting to her; (2) under Section 2-201(1) of the New York version of the UCC, the Statute of Frauds barred Turner's legal theory, as there was no writing evidencing a new contract between Turner and Christie's; and (3) on the basis of the

documentary evidence, no oral offer or agreement to return the Painting was formed.  ECF No. 6-1 at 14, 18, 22.

The Award was served on the parties by JAMS on April 16, 2020. The Award has not been vacated under 9 U.S.C. § 10, nor modified or corrected under 9 U.S.C. § 11 or pursuant to the JAMS Rules. On April 20, 2020, Christie's filed this petition with the Court, seeking an order confirming Young's April 6, 2020 Award and entering judgment in conformance with the Award.  See ECF No. 6-1 at 26-27.  Turner never filed an appearance in this case, however on May 13, 2020, Christie's received a two-page letter from Turner, which Christie's forwarded to the Court as an exhibit to its reply papers on May 18, 2020.  See ECF No. 24-1.[3]  That letter set forth Turner's objections to the Award, and Christie's reply addressed the arguments in Turner's letter.  ECF No. 24.  In the meantime, on May 1, 2020, the Foundation submitted a letter expressing its support for the petition.  ECF No. 23.

On July 10, 2020, the Court wrote to Turner, encouraging her to submit any submissions to the Court directly.  ECF No. 26.  The Court also informed Turner that she was permitted to proceed pro se, but advised her to engage counsel.  Id.  On September 10, 2020, the Court instructed Turner that if she wished to file any papers

---

[3] The Court also informed Turner in a July 10, 2020 letter that it never directly received her letter.  ECF No. 26.

in opposition to the pending petition, she should do so before October 12, 2020.  ECF No. 27.  To date, Turner has not filed any submission with the Court.

## II. **Legal Standard**

"The Federal Arbitration Act provides a streamlined process for a party seeking a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it."  Doud v. Gold, No. 19 Civ. 6561, 2019 WL 5209615, at *2 (S.D.N.Y. Oct. 16, 2019) (citing Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 582 (2008)).

The Court's role in confirming an arbitration award is "severely limited," Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (citing Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960)), and "[a] federal court may not conduct a reassessment of the evidentiary record," Wallace v. Buttar, 378 F.3d 182, 193 (2d Cir. 2004).  The petitioner's burden is not "onerous," and requires only "a barely colorable justification for the arbitrator's conclusion."  Neshgold LP v. New York Hotel & Motel Trades Council, AFL-CIO, No. 13 Civ. 2399, 2013 WL 5298332, at *7 (S.D.N.Y. Sept. 19, 2013) (citing New York City Dist. Council of Carpenters Pension Fund v. Angel Const. Grp., LLC, No. 08 Civ. 9061, 2009 WL 256009, at *1 (S.D.N.Y. Feb. 3,

2009)) (internal quotation marks omitted).  As a result, "normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and under the Federal Arbitration Act, the court must grant the award unless the award is vacated, modified, or corrected."  Doud, 2019 WL 5209615, at *2 (citing D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006)) (internal quotation marks omitted).

### III. Discussion

The Court confirms the Award.  As an initial matter, there are no grounds for setting aside the Award.  The parties all submitted to arbitration facilitated by JAMS, all parties fully participated in the Arbitration, and a final award was issued.  Turner has not made a formal challenge to the Award's legal sufficiency.  Additionally, the Court finds that the grounds for the Award are clear from the reasoning of the Award itself, which cites documentary evidence and testimony from the hearing on January 14, 2020.  Christie's has accordingly shown more than a "colorable justification" for the Award's conclusions.  Neshgold LP, 2013 WL 5298332, at *7.

Notwithstanding, Turner makes a series of objections to the confirmation of the Award.[4] She argues, inter alia, that (1) she was precluded from soliciting testimony from Jonquil O'Reilly and Guillaume Cerutti, fact witnesses who work for Christie's; (2) Christie's voided the Seller's Contract with Turner; and (3) Young should have been recused because he failed to disclose his conflict of interest prior to the Arbitration. The Court addresses these objections in turn.

Turner argues that Young did not delay the hearing to accommodate testimony of Christie's employee Jonquil O'Reilly — who was on medical leave during the hearing — who would have "prove[n]" her case because she could testify to Cobden's promise to return the Painting if Turner refused Christie's offer. ECF No. 24-1 (items 1-2). However, Young addressed the question of O'Reilly's testimony in the Award, and concluded that because Turner's argument regarding the cancellation of the auction sale fails as a matter of law, O'Reilly's fact testimony was unnecessary. ECF No. 6-1 at 21-22. Likewise, Turner argues that Young did not permit testimony of Christie's CEO Cerutti, who she

---

[4] Though the Court never directly received Turner's letter, ECF No. 24-1, notwithstanding the Court's request that she file any submissions on the docket, ECF No. 26, the Court will consider the objections set forth in the letter because pro se litigants are "afforded extra leeway in meeting the procedural rules governing litigation[.]" Sys. Agency v. Villanueva, No. 19 Civ. 6486, 2020 WL 7629879, at *2 (S.D.N.Y. Dec. 22, 2020) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)).

claims would have "prove[n]" her post-auction cancellation theory on the basis of his "approval" to permit the return of the Painting. ECF No. 24-1 (item 3). But Young also addressed Cerutti's testimony in his Award, finding it "irrelevant" given the legal barriers to Turner's claim. ECF No. 6-1 at 21. Because Young "provides a more than colorable justification for the outcome reached," Ace Am. Ins. Co. v. Christiana Ins., LLC, No. 11 Civ. 8862, 2012 WL 1232972, at *6 (S.D.N.Y. Apr. 12, 2012), the Court rejects Turner's deposition-related arguments.

Turner also sets forth three reasons that the Award should not be confirmed, which focus on her contention that the Seller's Contract was voided. ECF No. 24-1 (items 5-7). But Young addressed Turner's factual arguments to this effect in the Award. Faced with a petition to confirm an arbitration award, this Court "may not conduct a reassessment of the evidentiary record." Wallace, 378 F.3d at 193. Further, Turner argues that the Foundation should sue Christie's because Christie's voided the Seller's Contract. But the Arbitration already provided a forum for the Foundation to assert claims against Christie's, ECF No. 6-1 at 31-32, and in any event, that is not a defense to confirmation of the Award.

Turner next argues that the Award should not be confirmed because she sought Young's recusal on the basis of the belated

disclosure of Young's financial interest in JAMS and the fact that Christie's is a large JAMS client. ECF No. 24-1 (item 4). But Young already addressed and denied Turner's recusal motion. ECF No. 6-1 at 32-33. In any event, Young had never mediated or arbitrated a matter with any of the parties involved in the Arbitration. ECF No. 6-1 at 33. That Young is not disqualified follows a fortiori from the Second Circuit's holding that an "an arbitrator is not disqualified from selection as the neutral umpire by having received compensation from one of the parties for past service as a party-appointed arbitrator." Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs., 892 F.3d 501, 507 (2d Cir. 2018). Accordingly, Christie's repeated use of JAMS — an arbitration organization in which Young has a financial interest — would not give rise to an impermissible conflict of interest.

Because none of Turner's arguments requires the vacation, modification, or correction of the Award, the Court affirms the Award and requests the relief granted therein.

**IV. Conclusion**

For the foregoing reasons, Christie's petition to confirm the Award is GRANTED. The Clerk of Court is directed to enter judgment accordingly and to close the case.

**SO ORDERED.**

Dated:   New York, New York
         January 22, 2021

_____
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE